# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

ROBERT A. SMITH,

    Plaintiff,

v.                                  CASE NO. 07-CV-14828

COMMISSIONER OF               DISTRICT JUDGE AVERN COHN
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits and supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 11, 18.)

Plaintiff was 50 years of age at the time of the most recent administrative hearing. (Transcript, Dkt. 9 at 13, 44.) Plaintiff's relevant employment history included work as machine operator. (Tr. at 81.) Plaintiff last worked in 2000. (*Id.*) Plaintiff filed the instant claim on December 1, 2004, alleging that he became unable to work on October 21, 2004. (Tr. at 44-46.) The claim was denied at the initial administrative stages. (Tr. at 29.) In denying Plaintiff's claims, the Defendant Commissioner considered disorders of the back (discogenic and degenerative) and affective disorders as possible bases of disability. (*Id.*)

On February 5, 2007, Plaintiff appeared before ALJ Joseph E. Brezina, who considered the case *de novo*. In a decision dated May 24, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 10-22.) Plaintiff requested a review of this decision on July 23, 2007. (Tr. at 9.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 13, 2007, when, after the review of additional exhibits[2] (Tr. at 244-60), the Appeals Council denied Plaintiff's request for review.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final

(Tr. at 5-7.) On November 9, 2007, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course

---

decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference

from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If

6

the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. Administrative Record

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was seen by Devon A. Hoover, M.D., for quadriparesis[3] after a motor vehicle accident where Plaintiff was thrown from the back seat into the front of the vehicle as it struck a tree. (Tr. at 100.) Plaintiff underwent a C3 through 6 posterior laminectomy in October 2004. (*Id.* at 200-219, 227-35.) Plaintiff regained use of his legs and by December 2004, Dr. Hoover noted that Plaintiff was improving through physical and occupational therapy. (Tr. at 100, 165-67, 220-22.)

Plaintiff was also seen by Robert A. Krasnick, M.D., from May through November of 2005 for follow-up regarding injuries from the motor vehicle accident. (Tr. at 131-39.) Dr. Krasnick continued to treat Plaintiff for cervical spine pain and weakness through October 2006. (Tr. at 190-96.) Plaintiff was also treated by Bradley Klein, D.O., for neck spasms from November 2005 through March 2006 and by Thomas Spoor, M.D., through January 2006. (Tr. at 162, 185-86.) Plaintiff also underwent a series of Cognitive Evaluations (Tr. at 143-54), as well as a psychological evaluation conducted at the request of the Disability Determination. (Tr. at 101-03.)

---

[3]"Quadriparesis" is mild paralysis or weakness affecting all four limbs. 5 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE Q-7.

In late January 2007, Dr. Krasnick completed a physical treating source statement, indicating that Plaintiff needs the freedom to rest, recline or lie down at his own discretion throughout the normal workday, that he does not need to elevate his legs, that he takes medications that would interfere with his ability to work, that these limitations can be expected to last for 12 months or longer, and that Plaintiff's allegations of pain and fatigue are consistent with clinical findings. (Tr. at 197-98.)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 21, 2004. (Tr. at 15.) At step two, the ALJ found that Plaintiff's disorders of the cervical spine due to injuries sustained in a motor vehicle accident, status post corrective surgery, and cognitive limitations due to "mild" head trauma with an adjustment disorder and GAF of 55 were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 16.) At step four, the ALJ found that Plaintiff could not perform his previous work as a machine operator. (Tr. at 21.) At step five, the ALJ concluded that Plaintiff was a younger individual on the alleged disability onset date and that Plaintiff could perform jobs that exist in significant numbers in the national economy, such as small parts assembly (12,500 jobs at light), small parts packing (15,000 jobs at light and 3,250 at sedentary), visual inspection/sorting (12,500 at light and 1,500 jobs at sedentary), and bench assembler (3,250 jobs at sedentary). (Tr. at 22.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 21.) Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim.

2. **Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In late May 2005, Dr. Spoor found that although Plaintiff's uncorrected visual acuity was "significantly decreased," his vision was "fortunately correctable" to 20/25 in each eye. (Tr. at 155.) In March 2006, Dr. Blodgett reported "a good response" to injections for Plaintiff's headache, neck pain and spasms. (Tr. at 186.) In April 2006, Dr. Krasnick noted that Plaintiff reported that he had no falls, walked sometimes without a cane and performed most daily activities independently. (Tr. at 194.) Dr. Krasnick reported that, although forgetful, Plaintiff "does seem

9

to get through the day without significant intervention from his family" and is experiencing less fatigue. (*Id.*) In July 2006, the doctor again reported that Plaintiff was "functioning most of the time on his own." (Tr. at 192.) Strength was measured from 3+ to 4- on a 1 to 5 scale, and his "gait was steady." (*Id.*) Similar findings were made in October 2006. (Tr. at 190.)

In April 2005, Bradley Klein, D.O., a psychiatrist, diagnosed Plaintiff with a closed head injury and recommended that Plaintiff "complete the neurocognitive assessments so that an appropriate treatment program can be rendered to address cognitive changes as a direct result of involvement in the above mentioned 10/21/04 motor vehicle accident." (Tr. at 142.) That same month, Plaintiff underwent a Cognitive Evaluation. (Tr. at 143-51.) The evaluation found that Plaintiff was "significantly impaired" cognitively and recommended that Plaintiff "attend cognitive rehabilitation" and "pursue a neuro-ophthalmology exam to assess possible vision changes . . . ." (Tr. at 149-50.) In August 2005, however, Plaintiff was re-evaluated and it was determined that Plaintiff "demonstrated improved performance with processing and completing visual perceptual tasks in a more accurate and timely manner." (Tr. at 152.) Plaintiff "made gains in comprehension but remains inconsistent in the use of memory aids[.]" (*Id.*) Although it was "recommended that he continue therapy to improve short-term recall," the evaluation concluded by noting that Plaintiff's "[c]omprehension skills have improved to the pre-morbid level . . . ." (*Id.*) Although the record clearly reflects that Plaintiff was seriously injured in the automobile accident, and while there is evidence on this record to the contrary, I suggest that the evidence summarized above constitutes substantial evidence supporting the residual functional capacity found by the ALJ.

Plaintiff contends that the ALJ did not properly assess Plaintiff's complaints of pain, his limitations, or his credibility. (Dkt. 11 at 25-27.) Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying

medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

The ALJ expressly considered all of the above factors and determined that although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's statements regarding intensity, persistence, and limiting effects of the symptoms were not entirely credible. (Tr. at 17-19.) The ALJ found that although Plaintiff

did walk with a cane, his treating physician noted that his gait was only mildly unsteady without it. (Tr. at 19.) In addition, the ALJ found that physical therapy notes revealed that the Plaintiff's tingling and numbness in his hands was simply due to extended use of the computer the day before therapy. (*Id.*) The ALJ further relied on Plaintiff's statement of his daily activities which include cooking, watching television, listening to music, and visiting friends. (Tr. at 19, 88.) Further, Plaintiff's treating physician, Dr. Hoover, noted that Plaintiff was improving through physical and occupational therapy. (Tr. at 100, 165-67, 220-22.) I therefore suggest that substantial evidence supports the ALJ's findings.

Plaintiff also argues that the ALJ did not give proper weight to the medical opinions of Plaintiff's treating and examining physician. (Dkt. 11 at 27-30.) The ALJ noted that he did not give controlling weight to Dr. Krasnick's[4] opinion that Plaintiff would be unable to perform full-time work on a sustained basis. (Tr. at 19.) In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

---

[4]At times, he is referred to as Dr. Krasner.

12

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996). "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

In the instant case, the ALJ explained that he did not give controlling weight to Dr. Krasnick's conclusion in the treating medical source statement that Plaintiff could not perform

sustained full-time work because that conclusion was "out of proportion with the remaining objective medical evidence" and because it was contradicted by Dr. Krasnick's own examination of Plaintiff in April 2006 where he "noted that the [Plaintiff] had only mild physical limitations at best" and that Plaintiff was performing his activities of daily living independently and did not appear to need attendant care. (Tr. at 19, 192-94.) As noted earlier, in July 2006, Dr. Krasnick stated that Plaintiff's "gait was steady" and that Plaintiff was "encouraged to walk with a cane for activity." (Tr. at 192-93.) In addition, Dr. Krasnick noted that in February 2006, Plaintiff was"progressing terms of his balance and strength" and that his gait was only "mildly unsteady without a cane" and good with a cane. (Tr. at 195-96.) Dr. Krasnick also indicated that he was going to "cut down" the dosage of one of the pain medications. (Tr. at 196.) I therefore suggest that the ALJ properly declined to give controlling weight to Dr. Krasnick's conclusions where they were inconsistent with the medical evidence and directly contradicted by his earlier statements.

Finally, Plaintiff contends that the ALJ did not pose a complete and accurate hypothetical question to the Vocational Expert ("VE"). (Dkt. 11 at 31-33.) The hypothetical presumed the limitations contained in the RFC and also added that the individual may require a cane for ambulation and balance. (Tr. at 285-86.) I suggest that the ALJ's findings accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence as presented by the treating and examining physicians, as well as the daily activities described by Plaintiff himself.

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                           s/ *Charles E. Binder*
                                           CHARLES E. BINDER
Dated: November 17, 2008                     United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Francis L. Zebot, Kenneth F. Laritz, and the Commissioner of Social Security, and served on District Judge Avern Cohn in the traditional manner.

Date:  November 17, 2008           By     s/Patricia T. Morris
                                                  Law Clerk to Magistrate Judge Binder